**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **THOMAS MICHAEL SIMON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **Case No. CIV-06-683-C** |
| ) | |
| **CAPTAIN IVINS, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

**REPORT AND RECOMMENDATION**

Plaintiff, an Arizona state prisoner appearing pro se, brings this action pursuant to 42 U.S.C. § 1983 alleging various violations of his federal constitutional rights. Chief United States District Judge Robin J. Cauthron has referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Defendants have filed a motion to dismiss, to which Plaintiff has responded. Thus, the matter is at issue and ready for disposition. For the reasons set forth below, it is recommended that the motion be granted, and that this action be dismissed without prejudice for Plaintiff's failure to totally exhaust his administrative remedies. Plaintiff has also moved the Court for a temporary restraining order/preliminary injunction, and a default judgment against Defendant Lane Blair, and it is recommended that these motions be denied.

In a five-count complaint against six named Defendants,[1] Plaintiff alleges excessive force, lack of due process, violation of his right to privacy, denial of his right of access to the courts, and a state law tort of assault and battery. More specifically, he alleges in

---

[1] Plaintiff has also named ten "John Doe" Defendants who have been neither identified nor served. However, given the recommended disposition of this action, that fact is irrelevant to the outcome herein.

Count I that on September 9, 2005, he was verbally assaulted, threatened, and physically assaulted by Defendant Ivins at the prison library area. Complaint, p. 4. In Count II, Plaintiff alleges that he was placed in administrative segregation at the order of Defendant Ivins without due process and for no reason. Complaint, p. 5. In Count III, Plaintiff alleges that his right to privacy was violated when he was strip searched and subjected to a body cavity search in front of both male and female observers after being taken to a "small holding cage" in the outside recreation area used by segregated inmates. Complaint, p. 6. In Count IV, Plaintiff alleges that he was denied access to the courts when prison officials refused to process his informal and formal complaint regarding the alleged excessive force by Defendant Ivins, and took away his access to library typewriters. Complaint, p. 6A-6I.  In Count V, Plaintiff alleges that the actions of Defendant Ivins constituted a state law tort of assault and battery. Complaint, p. 6-J.

## II.  THE EXHAUSTION REQUIREMENT

It is Plaintiff's burden to show that he has exhausted his administrative remedies as required by the Prison Litigation Reform Act (PLRA). Steele v. Federal Bureau of Prisons, 355 F.3d 1204, 1207-09 (10th Cir. 2003), cert. denied 543 U.S. 925 (2004) (construing 42 U.S.C. § 1997e(a)). In Steele, the Tenth Circuit Court of Appeals held that exhaustion of administrative remedies is an essential allegation of a prisoner's claim, as "it is the prisoner who can best assert the relationship between his administrative grievance and court filing." Id. at 1210. Accordingly, a "prisoner must: (1) plead his claims with 'a short and plain statement ... showing that [he] is entitled to relief,' in compliance with Fed.R.Civ.P. 8(a)(2), and (2) 'attach[ ] a copy of the applicable

administrative dispositions to the complaint, or, in the absence of written documentation, describe with specificity the administrative proceeding and its outcome.'" Id. (citations omitted). Furthermore, "a complaint 'that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted.'" Id. (quoting Rivera v. Allin, 144 F.3d 719, 731 (11th Cir.1998)).

Further strengthening the exhaustion requirement, the Tenth Circuit has adopted both the concepts of procedural default and total exhaustion in connection with § 1997e(a). First, with regard to the concept of procedural default, the Court has stated that "[r]egardless of whether a prisoner goes through the formality of submitting a time-barred grievance, he 'may not successfully argue that he had exhausted his administrative remedies by, in essence, failing to employ them.'" Ross v. County of Bernalillo, 365 F.3d 1181, 1186 (10th Cir. 2004) (citations omitted). Second, the Court has held that an action containing both exhausted and unexhausted claims is subject to dismissal: "We agree that the PLRA contains a total exhaustion requirement, and hold that the presence of unexhausted claims in [the plaintiff's] complaint required the district court to dismiss his action in its entirety without prejudice." Id. at 1189; Wilson v. Ward, No. 04-6123, 2005 WL 256575, at **1 (10th Cir. Feb. 3, 2005)[2] (citing Ross, Graves v. Norris, 218 F.3d 884, 885 (8th Cir.2000) ("When multiple prison condition claims have been joined ..., § 1997e(a) requires that all available prison grievance remedies must be exhausted as to all of the claims.") and United States v. Mubarak, 315 F.Supp.2d 1057, 1060 (S.D. Cal. 2004) (examining the language of 42 U.S.C. § 1997e(a) and determining that "[u]se of the term

---

[2]This and any other unpublished dispositions are cited as persuasive authority pursuant to Tenth Circuit Rule 36.3.

3

'action' instead of 'claim' evidences an intent to disallow mixed complaints")). However, the Tenth Circuit has recognized that if prison officials prevent a prisoner from proceeding with exhaustion of administrative remedies, prison officials render that remedy unavailable such that a court will deem the procedure exhausted. Baughman v. Harless, No. 04-6256, 2005 WL 1806442, at *4 (10th Cir. Aug. 2, 2005).

### III. DISCUSSION

In their motion to dismiss, Defendants claim that Plaintiff has failed to either properly plead exhaustion or to actually exhaust his administrative remedies with regard to each of his claims. First, they claim that Plaintiff did not properly pursue grievances regarding his claims of excessive force and denial of due process to conclusion. Defendants' Motion, p. 6-10. Second, they claim that Plaintiff has not even begun the grievance process with regard to his claims of violation of his right to privacy or denial of right of access to the courts. Defendants' Brief, p. 10-11. Defendants have attached a copy of the applicable grievance policy, that of the Arizona Department of Corrections (Ex. 1), and Plaintiff's grievance records, Ex. 2.

In response, Plaintiff states that Defendants failed to adhere to the written grievance policy and actively attempted to prevent him from doing so as well. Plaintiff's Response, p. 3. He claims that he has been retaliated against for attempting to use the system, had his exhibits in this case confiscated, and been placed in administrative segregation. Id. at 4. He also claims that Defendant Hickey stated in writing at one point in the grievance process that she found the grievance to have been informally resolved, rendering it exhausted. Id. at 5.

### A. Plaintiff's Claims in Counts I and II[3]

First, the undersigned agrees with Plaintiff that his claims of excessive force and lack of due process as a result of Defendant Ivins' actions on September 9, 2005 – as raised in Counts I and II of the complaint – are exhausted. It appears from the timeline established by both Plaintiff and Defendants that Plaintiff did attempt to exhaust his administrative remedies with regard to these claims, but was unable to do so due to the absence of a copy of the original Inmate Letter written by him in an attempt to informally resolve the matter. On the same day as the alleged incident, September 9, 2005, Plaintiff submitted an Inmate Letter to Defendant Regan, unit manager. Complaint, p. 6-A; Defendants' Motion, p. 7; Defendants' Motion, Ex. 2, p. 1. Plaintiff alleges that on September 12, 2005, Chief Bryant stopped him on the way into the "chow" hall and told him he had received the Inmate Letter and that both he and the warden were looking into it. Complaint, p. 6-A. Plaintiff alleges that he met with an internal investigator on September 15, 2005, who showed him a copy of the Inmate Letter. Id. at 6-B.

On September 23, 2005, Plaintiff filed an Inmate Grievance about Defendant Ivins' alleged behavior, reciting that he had turned in an Inmate Letter but had received no response. Complaint, p. 6-B; Defendants' Motion, p. 7 and Ex. 2, p. 2. The Inmate Grievance form indicates that it was received by "M. McGee, Case Manager." Id. On October 12, 2005, Plaintiff filed an Inmate Grievance Appeal, directed to "Warden-Deputy Warden via Ms. Hickey," reciting that his Inmate Letter had gone unanswered, and that

---

[3]Although Plaintiff's claim in Count V is based upon the same facts as that in Count I, it is based upon state law and thus not subject to the exhaustion requirement of § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other *Federal law*...") (emphasis added); Torres v. Corrections Corp. of America, 372 F.Supp.2d 1258, 1263 (N.D. Okla. 2005).

the time for response to his Inmate Grievance had also passed without a case number being assigned. Complaint, p. 6-B; Defendants' Motion, p. 8 and Ex. 2, p. 3. On October 24, 2005, Plaintiff's grievance was returned to him with a memorandum indicating that "Inmate May Resubmit. All Time Frames Still Apply." Complaint, p. 6-B - 6-C; Defendants' Motion, p. 8 and Ex. 2, p. 4. In that memo, several pre-worded deficiencies are checked, including:

> Inmates shall attempt to resolve all allowed grievance issues informally before submitting a formal grievance;
>
> Attempt to resolve all issues informally, prior to filing a formal grievance by submitting the complaint to the assigned CO III on an Inmate/Response, Form 916-1P, within ten workdays of the action that caused the complaint;
>
> Inmates shall begin the Inmate Issue/Response with the following statement, "I am attempting to informally resolve the following problem";
>
> Inmates shall submit the originals of all grievance forms at any level of appeal, regardless of the category of the grievance;
>
> The inmate shall provide the original copies of documentation essential to the resolution of a grievance. . . ;
>
> If instructions are not followed as explained in this procedure and on the grievance form, the grievance will be returned unanswered for proper completion.
>
> Other (specify) [Improperly submitted].

Defendants' Motion, Ex. 2, p. 4 (citations omitted).

On November 9, 2005, Plaintiff wrote an Inmate Letter, addressed to "Grievance Coordinator," in which he states that he was never given a copy of the Inmate Letter written on September 9, 2005, that Chief Bryant acknowledged having received it, and that his grievance on the matter had been returned "forcing me to spend many days

the time for response to his Inmate Grievance had also passed without a case number being assigned. Complaint, p. 6-B; Defendants' Motion, p. 8 and Ex. 2, p. 3. On October 24, 2005, Plaintiff's grievance was returned to him with a memorandum indicating that "Inmate May Resubmit. All Time Frames Still Apply." Complaint, p. 6-B - 6-C; Defendants' Motion, p. 8 and Ex. 2, p. 4. In that memo, several pre-worded deficiencies are checked, including:

> Inmates shall attempt to resolve all allowed grievance issues informally before submitting a formal grievance;
>
> Attempt to resolve all issues informally, prior to filing a formal grievance by submitting the complaint to the assigned CO III on an Inmate/Response, Form 916-1P, within ten workdays of the action that caused the complaint;
>
> Inmates shall begin the Inmate Issue/Response with the following statement, "I am attempting to informally resolve the following problem";
>
> Inmates shall submit the originals of all grievance forms at any level of appeal, regardless of the category of the grievance;
>
> The inmate shall provide the original copies of documentation essential to the resolution of a grievance. . . ;
>
> If instructions are not followed as explained in this procedure and on the grievance form, the grievance will be returned unanswered for proper completion.
>
> Other (specify) [Improperly submitted].

Defendants' Motion, Ex. 2, p. 4 (citations omitted).

On November 9, 2005, Plaintiff wrote an Inmate Letter, addressed to "Grievance Coordinator," in which he states that he was never given a copy of the Inmate Letter written on September 9, 2005, that Chief Bryant acknowledged having received it, and that his grievance on the matter had been returned "forcing me to spend many days

asking for copies which nobody claims to have." Defendants' Motion, Ex. 2, p. 5. On November 30, 2005, Defendant Hickey wrote an Inmate Letter Response, stating:

> You fail to exhaust all your informal administrative remedies. On 10/24/05 I allowed you to correct and resubmit the grievance. I received your appeal attached to a grievance I never received. Where is the original copy of your original letter addressed to Chief Bryant? Staff have 20 workdays to respond from receipt of the Inmate Letter. 916.03.1.4. Where is the copy of your Inmate Letter "Informal Resolution" to the Case Manager? You fail to provide supporting documentation attempting to informally resolve your issue. I suggest if you want to get this matter solved as you stated on your letter dated 11/9/05 that you address Chief Bryant.

Defendants' Motion, Ex. 2, p. 6. However, Defendant Hickey does not address the concern raised in Plaintiff's Inmate Letter of November 9, 2005, regarding his inability to get a copy of the September 9, 2005, Inmate Letter.

On December 9, 2005, Plaintiff wrote an Inmate Grievance Appeal directed to "Warden via Ms. Hickey," in which he states that he has been trying since September 9, 2005, to "resolve this issue but have been blocked by Miss Hickey from doing so...." Defendants' Motion, Ex. 2, p. 7. He complains that a case number was never assigned to his grievance or his grievance appeal, and that Defendant Hickey was in violation of policy for failing to do so. Id. Thereafter, on January 20, 2006, Plaintiff filed another Inmate Letter with Defendant Hickey. Defendants' Motion, Ex. 2, p. 8. In this letter, Plaintiff complains about the lack of response to a grievance apparently unrelated to any issues herein, and then adds:

> I have also not received word from you regarding the grievance I handed to you for Assistant Warden/Warden level which had to do with inappropriate conduct of Captain Ivans [sic]. You have had the grievance since November of last year, and have still refused to even assign it a number. A reminder to you that when I stopped by your office three (3) weeks ago, you promised to call me up to see you later that week. You did not keep your promise, as

> I have not heard from you. Please know that should you fail to respond to this request within the next 10 working days, and give me the copies of my grievances, I will be left with no alternative but to seek other legal avenues to settle these claims. The time limits on both issues have run, and ADOC Policy states that if time runs on any level, the next level can be used. I will not write you again regarding this. Please act responsibly.

Id.

On January 27, 2006, Defendant Hickey responded:

> In response to your letter dated 1/20/06. Foremost, let me clarify I don't make promises to you or anyone. You misunderstood and obviously distorted what I said. I stated clearly to you that more than likely I would get back with you in the week when I find an answer for you and when I did I would call you. I have an answer for you this week and will call you. I need you to come by my office. Don't partonize [sic] me inmate Simon, about responding to your letters. 916.031.4.

Defendants' Motion, Ex. 2, p. 9. In a memorandum dated the same date, Defendant Hickey wrote the following to Plaintiff under the subject "Staff Grievance":

> You are fully aware and have been advised directly and personally by the Chief of Security Mr. Bryant, the matter has been turned over to internal Affair Investigator Brady. Investigator Brady met with you and advised you upon finalization a report would be submitted, and has been submitted to Warden Blair.
>
> Your complaint has been addressed. I find the grievance to be informally resolved.

Id. at p. 10.

On January 31, 2006, Plaintiff filed an Inmate Grievance Appeal with Director Dora Schriro, of the Arizona Department of Corrections, stating that he is appealing the decision of "Warden/Deputy Warden Level" for the following reasons:

> On 12-09-05, I appealed the decision of the Grievance Coordinator, Miss Hickey, she has attempted to stall the attached grievance by not assigning it a grievance number in direct violation of DOC Policy. She has refused both in writing and in person-to-person conversations to follow grievance procedures. On 10/12/05. the first Appeal went to the Warden/Deputy

> Warden via Miss Hickey (see attached). Miss Hickey signed for that appeal on 10/14/05. On 10/24/05 she tried to deny the grievance on procedural grounds, however, she was mistaken as to her reasons for not processing the appeal, and therefore the time ran on the Warden/Deputy Warden Appeal. Please Resolve.

Defendants' Motion, Ex. 2, p. 11. There is no response to this appeal.

Defendants contend that Plaintiff's failure to follow the remedial direction given to him by the grievance coordinator on October 24, 2005, resulted in his failure to complete the grievance process with regard to his claims regarding the alleged actions of Defendant Ivins on September 9. Thus, they contend, he has failed to properly complete the grievance process leaving his administrative remedies with regard to those claims unexhausted. Defendants cite Jernigan v. Stuchell, 304 F.3d 1030 (10th Cir. 2002), in support of their claim that an inmate must properly complete the grievance process – including the correction of deficiencies – in order to exhaust administrative remedies.

In Jernigan, authorities denied receipt of a grievance, but the plaintiff alleged that it had been lost or misfiled. 304 F.3d at 1032. Officials gave the inmate ten days to cure the defect, and the prisoner failed to do so. 304 F.3d at 1032-33. The failure to correct the error in the ten-day period was fatal even though the original submission may have been proper. Id.; Hoover v. West, No. 03-7106, 93 Fed. Appx. 177, 178-79 (10th Cir. Feb. 19, 2004)[4] (remedies unexhausted where authorities returned grievance unanswered because of mistake on their part, but plaintiff could have appealed with evidence of attempts to obtain response or attempted to cure, but instead filed suit); Hilliard v. Ray, No. 04-7090, 123 Fed. Appx. 908, 910 (10th Cir. Feb. 17, 2005) (stating that a prisoner had failed to

---

[4]This and any other unpublished decision cited herein is cited solely for its persuasive value in accordance with Tenth Circuit Rule 36.3.

exhaust available administrative remedies through his failure to resubmit a grievance after being given ten days to remedy filing defects).

The undersigned finds the situation in this case distinguishable from those above. Plaintiff here did attempt to cure the defect by bringing his inability to obtain the Inmate Letter to the attention of the grievance coordinator through a second Inmate Letter, and then continuing to pursue the matter all the way through the grievance process. Second, Defendant Hickey, on January 27, 2006, made a disposition of Plaintiff's "staff grievance." Although there is no number assigned so as to readily refer this disposition to Plaintiff's grievance regarding Defendant Ivins' alleged conduct, it is clear from the contents of the memorandum itself that it pertains to that grievance ("advised directly and personally by the Chief of Security Mr. Bryant ...." "Investigator Brady met with you ...."). Defendants' Motion, Ex. 2, p. 10. After this disposition, Plaintiff filed his final appeal with the Director of the Arizona Department of Corrections, and apparently has never received any response. Defendants' Motion, Ex. 2, p. 11. Under the Arizona Department of Corrections Policy, expiration of the time limit at any level in the grievance process entitles the inmate to proceed to the next review level. Defendants' Motion, Ex. 1, p. 5 (802.07.1.2.4). As there is no further review level, Plaintiff's administrative remedies were exhausted thirty days after he filed his appeal with the Director. Id. at 8 (802.09.1.4.3 and 802.09.1.4.4).

The materials provided by Defendants show that Plaintiff did indeed attempt to informally resolve his complaint regarding Defendant Ivins' alleged conduct through the Inmate Letter, that Plaintiff could not obtain the Inmate Letter to attach to the Inmate

Grievance in order to cure the deficiency noted by the grievance coordinator, and that Defendants did in fact have the Inmate Letter in their possession. Plaintiff attempted to cure the deficiency by bringing the unavailability of the Inmate Letter to the grievance coordinator's attention, and by proceeding forward at the expiration of the time to respond at each level of the grievance process. It is hard to see what more Plaintiff could have done under these circumstances to cure the deficiencies noted in the memorandum of October 24, 2005, as the Inmate Letter was necessary (1) to show his informal attempt to resolve the issue; (2) to show a timely informal attempt to resolve; (3) to show that the informal attempt document began with the proper language; and (4) to comply with requirement to submit the originals of all grievance forms at any level of appeal. See Defendants' Motion, Ex. 2, p. 4.

Under these circumstances, the undersigned finds that Plaintiff has exhausted his claims of excessive force and lack of due process as raised in Counts I and II. However, this action is nonetheless subject to dismissal due to Plaintiff's failure to totally exhaust his administrative remedies with regard to all claims raised in the complaint.

**B. Plaintiff's Claims in Counts III and IV**

Defendants contend that Plaintiff has not even begun exhaustion with regard to the claims raised in Counts III and IV of the complaint – denial of the right of privacy and denial of access to the court. The undersigned agrees.

First, with regard to Count III, Plaintiff alleges that his right to privacy was violated when he was subjected to a strip search and body cavity search in a holding cage in the administrative segregation outside recreation area. Complaint, p. 5-6. However, Plaintiff

11

never mentioned this incident in any of his administrative materials. In Count IV, Plaintiff alleges denial of his right of access to the courts. However, he appears to rely solely upon the administrative materials regarding the incident with Defendant Ivins, the later of which of course also referred to the difficulties he was having in getting responses from prison staff. However, there was no court proceeding, and thus no interference with access to the courts referenced. In his complaint, he references things such as his activities in the legal library being monitored, being removed from the library for being unshaven, and being prohibited from using the library typewriter. However, there are no administrative materials showing that Plaintiff ever complained regarding such things.

The Tenth Circuit has adopted the concept of total exhaustion in connection with the Prison Litigation Reform Act (PLRA) exhaustion requirement. With regard to this concept, the Court stated as follows:

> In the PLRA context, a total exhaustion rule would encourage prisoners to make full use of inmate grievance procedures and thus give prison officials the first opportunity to resolve prisoner complaints. It would facilitate the creation of an administrative record that would ultimately assist federal courts in addressing the prisoner's claims. Moreover, it would relieve district courts of the duty to determine whether certain exhausted claims are severable from other unexhausted claims that they are required to dismiss. Prisoners suing under § 1983, no less than habeas petitioners, can be expected to adhere to this straightforward exhaustion requirement. Finally, the total exhaustion rule will not increase the burden on federal courts, but will instead tend to avoid at least some piecemeal litigation.

Ross v. County of Bernalillo, 365 F.3d 1181, 1190 (10th Cir. 2004) (citations omitted). Thus, the Court held that an action containing both exhausted and unexhausted claims is subject to dismissal: "We agree that the PLRA contains a total exhaustion requirement,

and hold that the presence of unexhausted claims in [the plaintiff's] complaint required the district court to dismiss his action in its entirety without prejudice." Id. at 1189.

Recently, the Tenth Circuit has again addressed the total exhaustion requirement, finding it to be applicable except where such would simply waste judicial resources and create an unnecessary burden on litigants. Kikumura v. Osagie, 461 F.3d 1269, 1288 (10th Cir. 2006) (where the plaintiff submits the unexhausted claim to the prison grievance system after filing suit, and the prison issues a final rejection of that claim for untimeliness, concerns underlying total exhaustion requirement are inapposite). First, the Kikumura Court examined the policy underpinnings of the total exhaustion rule and found that when a grievance *has already been rejected* – albeit on timeliness grounds – prison officials have already been given the first opportunity to resolve a complaint and the administrative record is complete. Id. Thus, there is no need to determine whether unexhausted claims are severable from exhausted claims and there is no possibility of piecemeal litigation. Id. Second, it crafted a rule of procedural default in the PLRA context, finding that in such cases the grievance is in fact exhausted for purposes of the total exhaustion rule, and if it has been properly rejected on procedural grounds should be dismissed from the complaint *with prejudice*. Id. at 1288-1290, 1290 ("Once a prison formally denies an inmate's grievance for untimeliness, and either the inmate does not challenge the basis for that decision or the court upholds the decision, the inmate's failure to exhaust is no longer 'a temporary, curable, procedural flaw.'"). Where such a claim has been procedurally defaulted, the total exhaustion doctrine does not keep the

13

remainder of the action from going forward, because the defaulted claim is dismissed with prejudice. See id. at 1291.

In this case, however, the prison has never been given the opportunity to address Plaintiff's claim that his privacy was violated on September 9, 2005, or that his right of access to the courts was violated as alleged in the complaint filed herein.[5]  Thus, the narrow exception to the total exhaustion doctrine established in Kikumura does not apply in this case. The only conclusion that is supported by the information provided by Plaintiff is that he has not exhausted his administrative remedies with regard to all of his claims. One of the main purposes of exhaustion is to give prison officials the first opportunity to address the prisoner's complaint - thereby potentially eliminating the need for litigation - and to create an administrative record that facilitates review of the prisoner's claim if litigation is ultimately pursued. Ross, 365 F.3d at 1184.  This has apparently not occurred in this case with regard to at least some of Plaintiff's claims. Accordingly, the undersigned finds that Plaintiff's allegations and his supporting documentation are insufficient to satisfy his burden of showing total exhaustion of administrative remedies. Thus, it is recommended that this action be dismissed without prejudice. Steele, 355 F.3d at 1213 ("A dismissal based on lack of exhaustion . . . should ordinarily be without prejudice."); Ross, 365 F.3d at 1190 (where a prisoner submits "a

---

[5]As will be noted below in connection with Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, Plaintiff has filed some more administrative materials regarding subsequent alleged acts regarding interference with access to the courts and/or retaliation.

complaint containing one or more unexhausted claims, the district court ordinarily must dismiss the entire action without prejudice.").[6]

## IV. PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiff has also filed a motion for a temporary restraining order and preliminary injunction. Although there has been no response filed on behalf of any of the Defendants, the motion does not indicate that it was served on any of them.[7] However, the undersigned does not find it necessary to call for a response as it is recommended that the motion be denied for Plaintiff's failure to meet the heavy burden necessary to support his request for injunctive relief.

In support of his motion, Plaintiff alleges that he has been targeted for searches, falsely charged with theft, and placed in administrative segregation. Plaintiff's Memorandum of Law, p. 1. In his declaration in support of his motion, he claims that he served five of the six Defendants herein on August 3, 2006, through August 18, 2006. Plaintiff's Declaration, ¶ 3. He claims that beginning on August 8, certain members of the prison staff, none of whom are named as Defendants herein, began to take interest in law books he was using in the prison unit day room. Id. at ¶ 5-6. Eventually, the books,

---

[6]The undersigned notes that the recommended disposition poses no apparent difficulty under the applicable statute of limitations under the facts in this case. In Oklahoma, the limitations period for § 1983 actions is two years, Price v. Philpot, 420 F.3d 1158, 1162 (10th Cir. 2005), and Oklahoma's savings statute would appear to allow Plaintiff to reassert claims within one year of the dismissal if the current action were considered timely. See Okla. Stat. tit. 12 § 100; Williams v. City of Guthrie, No. 03-6212, 109 Fed.Appx. 283, 286 (Sept. 8, 2004); cf. Grider v. USX Corp., 847 P.2d 779, 783 (Okla. 1993) (Okla. Stat. tit. 12 § 100 "applies to extend the limitations period regardless whether the dismissed suit was filed in state court or federal court sitting within the state of Oklahoma").

[7]The motion was filed after waiver of service but before counsel for Defendants had entered an appearance. See Doc. Nos. 11-18.

which Plaintiff alleges were to be discarded and were instead given to him in the past by a prison librarian, were confiscated and Plaintiff placed in administrative segregation. Id. at ¶ 8-11. He also alleges that during the time of a search of his cell in which more legal supplements were discovered and confiscated, prison staff read materials in boxes marked "legal" and that some exhibits to be used in this case were also confiscated. Id. at ¶ 9-10.  Plaintiff alleges that while he was in segregation, he asked nine different corrections staff for a pen and paper in order to write this Court, but was denied for three and a half days. Id. at ¶ 13. He claims that he was released from segregation six days later with no explanation.  Id. at ¶ 17. He claims that he was also approached by Chief of Security Bryant about an Inmate Letter he wrote while in segregation complaining about "the recent scheme which led to false charges" against Plaintiff, and that Bryant pointed at him, and spoke to him in "a somewhat loud and agitating manner." Id. at ¶ 18.  He also alleges that he was told by two unidentified staff members that Chief Bryant had put pressure on them to write Plaintiff up for any infraction, or if he was found to be helping other inmates with their legal work. Id. at ¶ 19. Finally, he alleges that a few days later he was asked to stop writing on the back of a chair instead of on a table, even though he had always written on the back of a chair in the past in order to keep table space clear for other inmates to play table games. Id. at ¶ 20.  He claims it is "whispered" by both inmates and staff that he will soon be put back in segregation because "CCA's policy is not to allow inmates who sue them to remain on the yard," and that he "fully expect[s] to be transferred...." Id.  at ¶ 22-23.

To obtain a preliminary injunction under Fed. R. Civ. P. 65, the movant must show (1) a substantial likelihood of success on the merits of the case; (2) irreparable injury to the movant if the preliminary injunction is denied; (3) the threatened harm to the movant outweighs the injury that the proposed injunction may inflict upon the opposing party; and (4) the injunction, if issued, would not be adverse to the public interest. Kikumura v. Hurley, 242 F.3d 950, 955 (10th Cir. 2001); Chemical Weapons Working Group, Inc. v. United States Dep't of the Army, 111 F.3d 1485, 1489 (10th Cir. 1997); Lundgrin v. Claytor, 619 F.2d 61, 63 (10th Cir. 1980).

Having carefully reviewed the materials submitted with Plaintiff's motion, the undersigned finds that Plaintiff cannot satisfy the requirements for a preliminary injunction. First, Plaintiff has not shown a substantial likelihood of success on the merits. Although prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts, Smith v. Maschner, 899 F.2d 940, 947 (10th Cir. 1990), the likelihood that Plaintiff could prevail on such claim on these facts could not be characterized as "substantial." While Plaintiff may have presented circumstances in the form of the timing of the actions that raise an inference of a retaliatory motive, he also does not deny his possession of the books in question outside of the library – only claiming that he came by them with the permission of another librarian. The same is true of the seemingly petty – at least by standards applicable to non-prison settings – incident regarding the use of a chair back rather than a table for writing. Plaintiff also does not indicate what "exhibit" was confiscated from

his box labeled "legal," and refers to unnamed staff members, "whispers," and his expectation of transfer.

"Irreparable injury" has also not been shown. Plaintiff has filed both his motion and a reply to Defendant's motion to dismiss despite these actions, and apparently continues to utilize the prison's administrative remedies. Plaintiff's belief that he may be subjected to unspecified actions in the future is not sufficient to establish that he is in danger of irreparable harm. See Johnson v. Saffle, No. 99-6148, 2000 WL 130726, at*2 (10th Cir. Feb. 4, 2000) (affirming the denial of a temporary restraining order " because plaintiff had failed to establish a threat of irreparable harm").

The third factor also tips against granting an injunction. In Turner v. Safley, 482 U.S. 78 (1987). the Supreme Court cautioned against judicial interference with the daily administration of prisons:

> Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint.

Turner, 482 U.S. at 84-85. In this case, Plaintiff has initiated administrative remedies regarding his claims of retaliation that are apparently incomplete. The prison administration should have the first opportunity to respond to these claims regarding retaliation – allegations which it should and the Court does take most seriously.

In sum, the undersigned finds that Plaintiff has failed to meet his heightened burden to establish an entitlement to injunctive relief. Accordingly, it is recommended that Plaintiff's request for a preliminary injunction be denied.

**V. PLAINTIFF'S MOTIONS FOR DEFAULT JUDGMENT AGAINST DEFENDANT BLAIR**

Plaintiff has also moved the Court for a default judgment in two separate motions against Defendant Lane Blair. [Doc. Nos. 21 and 22]. Plaintiff has filed a brief affidavit citing the fact that Defendant Blair "was served and accepted service" and yet has "not filed or served an answer." Affidavit for Entry of Default, ¶ 2, 3 The undersigned notes that the same counsel who filed the motion to dismiss on behalf of the other Defendants, and who signed the waiver of service of summons on each of their behalfs, filed the waiver on behalf of Defendant Blair. Thus, it can be logically inferred that Defendant Blair was only inadvertently omitted from the motion to dismiss – which was not based upon any matter specific to a particular Defendant, but upon the statutory prerequisites to the action in general. Accordingly, given the recommended disposition of this action, the undersigned finds that it would be both unjust and a waste of judicial resources to grant such a motion, and it is therefore recommended that the motions for default judgment be denied as moot. Griffin v. Suthers No. 05-1092, 2005 WL 3131704, *4 (10th Cir. Nov. 25, 2005), cert. denied, __ S. Ct. ___, 2006 WL 1522041 (Oct. 2, 2006) (decisions to enter judgment by default are committed to the district court's sound discretion).

**RECOMMENDATION**

For the reasons set forth above, it is recommended that Defendants' Motion to Dismiss [Doc. No. 19] be granted and that this action be dismissed without prejudice for failure to show exhaustion of administrative remedies. It is further recommended that Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction [Doc. No.

17] and Plaintiff's Request for Entry of Default [Doc. Nos. 21 and 22] be denied. Plaintiff is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by November 13, 2006, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1.  Plaintiff is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal questions contained herein.  <u>Moore v. United States</u>, 950 F.2d 656 (10th Cir. 1991). This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED this 24th day of October, 2006**.

_____
DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE